UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACKIE GARY,

    Plaintiff,                                          Case No. 05-60256

v.

                                                    Hon. John Corbett O'Meara

SUNRISE WINDOWS, LTD.,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the court is Defendant's motion for summary judgment, filed June 1, 2006. Plaintiff submitted a response brief on June 30, 2006; and Defendant filed a reply on July 19, 2006. The court heard oral argument on August 24, 2006, and took the matter under advisement. For the reasons set forth below, Defendant's motion is granted.

## BACKGROUND FACTS

Plaintiff, Jackie Gary, was employed as a production worker for Defendant, Sunrise Windows. On July 8, 2002, Sunrise disciplined Gary as a result of an alleged attendance violation. Gary filed an EEOC charge, claiming that he was disciplined as a result of his race (African American). The parties entered into a settlement agreement that resolved the charge on September 30, 2002.

On November 17, 2003, another Sunrise employee accused Gary of stealing pop from a lunchroom vending machine. Apparently, the vending machine malfunctioned such that a person could remove bottles of soda without paying for them. An employee witnessed Gary removing several bottles of soda from the machine without paying for them and informed the

human resources department. Sunrise conducted an investigation of the incident and took statements from several witnesses. Sunrise concluded that Gary had violated company policy and terminated his employment on November 18, 2003.[1]

Gary filed an EEOC charge regarding his termination and was provided a right to sue letter. He then filed this suit on November 8, 2005, alleging discrimination in violation of Title VII and the Elliott-Larsen Act. The court dismissed Plaintiff's state claim on December 22, 2005. Defendant seeks summary judgment on Plaintiff's remaining federal claim.

## LAW AND ANALYSIS

### I.      Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When analyzing a motion for summary judgment, the court must view the facts and any reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### II.     Race Discrimination

Title VII prohibits employers from discharging or otherwise discriminating against an

---

[1] Specifically, Gary violated "Cardinal Rule #1," which states that the following behavior is unacceptable and may result in termination: "Theft, pilferage, or unauthorized possession of property belonging to the employer or another employee, any customer, delivery people, or suppliers."

employee on the basis of race.  See 42 U.S.C. § 2000e-2.  A plaintiff may establish a *prima facie* case under Title VII by presenting direct evidence of discrimination or by presenting circumstantial evidence satisfying the McDonnell-Douglas burden-shifting paradigm.  See, e.g., Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997).  Plaintiff does not present direct evidence of discrimination here.  Accordingly, Plaintiff must proceed by satisfying the following elements: "(1) that he is a member of a protected group; (2) that he was subject to an adverse employment action; (3) that he was qualified for the position from which he was fired; and (4) that he was treated differently than employees outside of the protected class for the same or similar conduct." Singfield v. Akron Metro. Housing Auth., 389 F.3d 555, 561 (6th Cir. 2004) (citations omitted).  "[T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992).

    In this case, the parties disagree only that the fourth element has been met.  Gary contends that he was treated differently from white employees because some white employees also took pop from the vending machine and were not investigated or disciplined.  At his deposition, Gary identified Matt Vargo and Ruth Cook as white employees who he had seen taking items from vending machines.  See Gary Dep. at 42-48.  Gary admitted, however, that he did not report these employees to management and did not know if anyone else did.  Id.  Gary also asserts that supervisors knew that white employees were stealing pop.  Gary has not, however, named these supervisors.

In fact, the uncontroverted evidence is that no white employees were ever reported to management or human resources for stealing pop, as Gary was. Gary has not supported his claim that supervisors knew that white employees were stealing pop, but overlooked it. Gary has not identified a single "similarly situated" employee that was treated more favorably than he was. Nor has Gary produced any other evidence that race was a motivating factor in his termination. Accordingly, Gary cannot establish a *prima facie* case of race discrimination under Title VII.

### III.     Retaliation

Gary also argues that Sunrise terminated him in retaliation for filing an EEOC charge. In addition, Gary alleges that after his EEOC claim was resolved:

> [H]e was given a more "risky" job. Mr. Gary had to work on windows with beveled [glass], which were very expensive windows. Mr. Gary was forced to perform this job by himself, which was typically performed by two or more people, as it was a difficult job. In addition to this concrete example of retaliation, Mr. Gary also reports that he was treated differently by supervisors, that he was told that he was not allowed in the office area (even though every other employee was permitted to be there), he was often singled out for doing the same things as other workers, and that his level of supervision increased in the work area.

Pl.'s Br. at 14. In support of these allegations, Gary cites to his own deposition testimony, which contain conclusory allegations and his own subjective assessment of his working conditions. See Def.'s Ex. A at 28-29, 51-54. (The testimony does not support Gary's claim that he was forced to perform a job that was typically performed by two or more people.)

> Q:   Did you feel that there was any form of retaliation from July '02 to November '03?
> A:   Well, I was doing more work than any other workers in the department.
> Q:   Okay.

> A: And I was looked upon more than any other.
> Q: What do you mean by "looked upon"?
> A: Well, someone – they have people to come back and see what type of job you're doing. Nine times out of ten they would be coming back looking at me, they wouldn't be worried too much about what anybody else was doing.
> Q: Were you ever reprimanded or anything like that?
> A: A couple times for standing and looking like everybody else, I've been reprimanded a couple times.
> Q: In writing or just verbally?
> A: Just verbally. Sometimes they considered it a joke and sometimes – it wasn't to me.

Def.'s Ex. A at 28-29. Plaintiff also claimed that he was always given the job of building expensive windows; "if you break one of them, you get reprimanded and you would go into another work area. And I was always the one that had to put those in for some reason. No one else had to do it." Id. at 52. (Plaintiff never broke one of the "expensive" windows.) Plaintiff contends that after he filed his EEOC charge, Sunrise was "on" him about not being at his work station, and that his supervisors and others were not as friendly as they were before. Id. at 51, 54 ("Things changed. Some people talk to you and then after that some don't. You go up in the office, you're not as liked as well as you used to. I used to be able to go up and get ink pens or paperwork, then they'd 'you're not allowed up in here anymore.' Everybody else could go up there and get it.").

As a threshold matter, the court notes that Plaintiff did not expressly plead a retaliation claim in his complaint, although his complaint could be read broadly to allege retaliatory discharge, as opposed to other acts of retaliation. Plaintiff cannot raise a claim for the first time in a response to a motion for summary judgment. See Tucker v. Union of Needletrades, Indus. & Textile Employees, 407 F.3d 784, 787-88 (6th Cir. 2005). Even if Plaintiff's retaliation claim had been properly plead, however, summary judgment is proper.

In order to establish a *prima facie* case of retaliation, the plaintiff must show that:

> (1) she engaged in activity protected under Title VII; (2) the defendant knew that she engaged in the protected activity; (3) the defendant subsequently took an adverse, retaliatory action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) the protected activity and the adverse action were causally connected.

Randolph v. Ohio Dept. of Youth Serv., 453 F.3d 724, 736 (6th Cir. 2006).

The Supreme Court has recently clarified the standard for Title VII retaliation claims. See Burlington Northern & Santa Fe R.R. Co. v. White, 126 S.Ct. 2405 (2006). "The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id. at 2414. The Court further explained:

> In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting an charge of discrimination.'" We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth "a general civility code for the American workplace."

Id. at 2415.

In this case, Plaintiff has not set forth evidence of a "materially adverse" action on the part of Sunrise. Many of Plaintiff's allegations are conclusory and unsupported. See Wade v. Knoxville Utilities Bd., 259 F.3d 452, 463 (6th Cir. 2001) ("[C]onclusory allegations and [the plaintiff's] perceptions . . . are not sufficient to stave off summary judgment.").

Further, most of the retaliation claimed by Plaintiff falls into the category of "trivial harms" – such as Plaintiff's claims of increased supervision and decreased friendliness on the part of his coworkers. Although a more arduous job assignment may support a claim of

retaliation, in this case Plaintiff has not supported his claim that his job assignment became materially more "risky" or arduous than what he performed before he filed his EEOC charge. Cf. White, 126 S.Ct. at 2417 (reassignment from forklift duty to track laborer supported retaliation claim where new duties were "by all accounts more arduous and dirtier," less prestigious, and objectively less desirable).

In addition, Plaintiff has not demonstrated a causal connection between his EEOC charge and his termination, which took place sixteen months later. See Jackson v. Pepsi Cola, Dr. Pepper Bottling Co., a Div. of RKO Bottlers of Toledo, Inc., 783 F.2d 50 (6th Cir.1986) (a time span of more than one year from the filing suit to the firing militated against finding that discharge was retaliatory). Plaintiff cannot, therefore, establish a *prima facie* case of retaliation.

## CONCLUSION

In finding that Plaintiff is unable to support his race discrimination and retaliation claims, the court does not intend to vindicate Sunrise's decision to discharge him. Although the court views Plaintiff's alleged behavior as inappropriate, it finds Sunrise's response to be heavy handed. The court will not, however, second-guess Sunrise's business judgment in the absence of evidence that its decision was motivated by impermissible factors.

## ORDER

IT IS HEREBY ORDERED that Defendant's June 1, 2006 motion for summary judgment is GRANTED.

                                                                                        s/John Corbett O'Meara
                                                                                        United States District Judge

Dated: August 30, 2006

  I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, August 30, 2006, by electronic and/or ordinary mail.

                      s/William Barkholz
                      Case Manager